**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JIN LEE,<br><br>                         Plaintiff,<br><br>         v.<br><br>HOLY NAME MEDICAL CENTER,<br><br>                         Defendants, | Index No. 24-cv-9652<br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Jin Lee ("Plaintiff"), by and through her undersigned counsel, as and for her Complaint in this action against Holy Name Medical Center, alleges as follows:

## I.    Introduction

1.    Plaintiff has initiated this action against Holy Name Medical Center (hereinafter collectively "Defendant") for violations of the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601, *et. seq*.) and the New Jersey Law against Discrimination ("NJ LAD" - N.J.S.A. §§ 10:5-1 *et. seq*.) As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## II.    Jurisdiction and Venue

2.    This action is initiated pursuant to the Family and Medical Leave Act ("FMLA") and applicable state law(s). This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

1

3.      The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state- law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4.      Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### III.      Parties

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult with an address as set forth above.

7.      Holy Name Medical Center (hereinafter "Defendant Holy Name" if referred to individually) is a 361-bed acute care hospital, a renowned cancer center located in Teaneck, New Jersey.

8.      At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of its employment with and for the benefit of Defendant.

### IV.      Factual Background

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Defendant employed Plaintiff as a Manager of Administrative Services from in or about 2007 until her unlawful termination on or about June 17, 2024.

11.     In total, Plaintiff worked for Defendant Holy Name for over 17 years.

12.     Defendant was a covered entity under the FMLA.

13.     Ms. Lee served Holy Name Medical Center with dedication and excellence, overseeing the daily operations of the administrative staff, managing patient registration, scheduling, payroll for the department, and other critical tasks.

14.     She also maintained time cards for payroll for the entire department including clinical staff, administrative staff and physicians.

15.     Her immediate supervisor was Cheri Marchant-Armstrong who was a director of Breast Programs until April 5, 2024.

16.     Following Ms. Marchant-Armstrong's departure, plaintiff was the only main manager of the Breast Programs department.

17.     Plaintiff's primary job duties were mostly performed from her desk at her office computer.

18.     Plaintiff very rarely had to travel to clinical or other areas of the hospital to perform her job duties.

19.     During Plaintiff's 17 years of employment, she was not the subject of formal coachings, warnings for performance, behavior or otherwise.

20.     Plaintiff had always performed her job well, received positive accolades for her performance and was promoted to varying administrative roles throughout her career, the most

recent of which was specifically created for Plaintiff by high-level administration given the myriad of responsibilities she was capable of handling.

21.     As soon as Ms. Marchant-Armstrong left Holy Name, Ms. Lee experienced a breakdown that led to extreme anxiety and stress.

22.     It became increasingly difficult for her to go to work and maintain composure, not knowing when or how Ms. Stennett would complain about something and demand solutions from her.

23.     Ms. Lee took FMLA leave from April 17, 2024, until June 14, 2024, during which time she was treated by psychiatrist Dr. Joseph Siragusa in Westwood, NJ.

24.     Due to plaintiff's mental condition, her doctor authorized her to be on medical leave. When Ms. Lee submitted her FMLA leave notification to defendants, Ms. Stennett became very angry because the Breast Program department was already short staffed with Ms. Marchant-Armstrong leaving Holy Name and now Ms. Lee taking a FMLA leave, leaving no manager in charge of the department.

25.     As soon as Ms. Lee notified Holy Name of her FMLA leave, Ms. Stennett called plaintiff even though it was Ms. Lee's day off and her leave started the next day. Knowing Ms. Stennett's fiery temperament, Ms. Lee was terrified of explaining her FMLA leave and did not answer the call from Ms. Stennett.

26.     On June 17, 2024, when Ms. Lee returned to work, she found Jean Stennett sitting at her desk in the dark. Ms. Stennett immediately told her that she needed to report to Human Resources.

27.     In the HR department, HR VP Dennis Sparks and Manager Jenny Vargas informed her that they were restructuring the service line and eliminating her position.

28.     During Ms. Lee's leave, a lead mammogram technician was promoted and given the title of Manager of the Breast Center.

29.     Ana Marques was hired as Office Manager for oncology operations on August 2024, replacing a manager who was leaving for a new job. Since Ms. Lee's termination, Ana Marques has been named the "covering manager."

30.     Ms. Stennett had a personal dislike for Ms. Lee and attempted to have her dismissed in 2022. Ms. Lee learned about a meeting between Jean Stennett and Dennis Sparks from HR, which was held after Stennett took issue with an email Ms. Lee had sent. In the email, Ms. Lee explained that she was following clinical protocols established by physicians, but Stennett viewed this as inflexibility and resistance to change. After reviewing the matter, Mr. Sparks concluded there were no grounds for Ms. Lee's termination.

31.     During Ms. Stennett's five-year tenure, multiple complaints arose, including anonymous group letters from oncology staff and formal letters from long-time employees and physicians who were wrongfully terminated. These complaints were directed to CEO Michael Maron and Dennis Sparks, VP of Human Resources. Even radiologists and breast surgeons who worked closely with Ms. Lee raised concerns in meetings with the CEO, but no action was taken.

32.     Ms. Stennett's leadership style is marked by intimidation, brusqueness, and bullying, and she has a reputation for pettiness and retaliation.

33.    Since Ms. Stennett's arrival to "turn around" Oncology Services, Ms. Lee has felt demoralized, anxious, distressed, and frustrated. Ms. Stennett's behavior has been unprofessional, failing to support staff and managers with necessary resources such as funding, staffing, and moral support. She consistently belittled and intimidated staff, made no effort to build a team, and failed to engage with employees. Her leadership created a toxic work environment. Furthermore, she allowed poor physician behavior that jeopardized patient safety, which led to the departure of talented physicians. This created a hopeless and unproductive atmosphere for Ms. Lee and the staff, whose dedication to patient care was disregarded by senior leadership.

34.    Ms. Lee, a dedicated employee for 17 years, played a crucial role in expanding the department from one physician and two exam rooms to six physicians and ten exam rooms, while also fostering the development of staff. Throughout her time at Holy Name, she had never taken a leave of absence or called in sick.

35.    Her mental health deteriorated earlier this year, leading her to take personal time for the first time in April. She expressed concerns to her psychiatrist that Ms. Stennett might retaliate upon her return to work.

36.    Ms. Lee was terminated from her employment with Defendants, effective June 17, 2024.

### Count I
### Violations of Family and Medical Leave Act ("FMLA")
### (Retaliation)

37.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38.    Plaintiff was a full-time employee who worked for Defendants for more than 1 year within a location that employed at least 50 employees within 75 miles.

39.     Plaintiff applied for and was formally approved for FMLA-qualifying intermittent medical leave in April 17, 2024 until June 14, 2024 and was eligible for up to a full twelve (12) weeks of leave.

40.     Plaintiff was singled out for termination: (a) to prevent her from further using FMLA in the future; (b) to dissuade her overall FMLA use; (c) because she used FMLA.

41.     Plaintiff was terminated in exceedingly close proximity to applying for and obtaining FMLA approved leave, subject to significant acts of antagonism in connection wither invocation of FMLA, and terminated for pre-textual and objectively false reasons.

42.     These actions as aforesaid constitute and retaliation violations of the FMLA.

**Count II**
**Violation of the New Jersey Law against Discrimination (NJ LAD)**
**([1] Actual/Perceived/Record of Disability Discrimination [2] Retaliation**
**[3] Failure to Accommodate; [4] Hostile Work Environment)**

43.     The preceding paragraphs are fully incorporated herein by reference as if set forth in their entirety.

44.     Plaintiff was terminated due to: (a) her actual or perceived health issues, and (b) her request for reasonable accommodations.

45.     Defendants created a hostile work environment, which left Plaintiff in a mentally unstable condition. While Plaintiff was on medical leave, Defendants terminated her under the guise of restructuring the department, yet they hired and promoted other managers to replace her during her leave.

46.     Defendants also took additional actions, as described herein, to foster a hostile work environment.

47.     The adverse actions outlined above constitute both retaliation and discrimination in violation of the New Jersey Law Against Discrimination (NJ LAD).

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

a.  Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom(s) of discriminating / retaliating against employees, and are to be ordered to promulgate an effective policy against such discrimination/retaliation and to adhere thereto;

b.  Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay (absent reinstatement), salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered the aforesaid unlawful actions at the hands of Defendants until the date of verdict;

c.  Plaintiff is to be awarded punitive or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

d.  Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress and pain and suffering);

e.  Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

f.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

g.  Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues.

Dated: October 7, 2024

 /s/ Ryan Kim
Ryan J. Kim

Ryan J. Kim, Esq.
Ryan Kim Law, P.C.
222 Bruce Reynolds Blvd. Suite 490
Fort Lee, NJ 07024
ryan@RyanKimLaw.com